# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-8003

IN RE RODNEY SCHONLAND, MEMBER OF THE BAR

Before GREENE, *Chief Judge*, and HAGEL and LANCE, *Judges*.

## O R D E R

Before the Court is a disciplinary matter regarding attorney Rodney Schonland (respondent). For the reasons that follow, the Court will suspend Mr. Schonland from practice before this Court for a period of two years.

## I. BACKGROUND

On April 5, 2004, the Court received a grievance from Scott McGrath, a former appellant before the Court, *see McGrath v. Principi*, U.S. Vet. App. No. 02-2050, concerning the quality of the representation provided to him by attorney Schonland. Mr. McGrath alleged that Mr. Schonland had misinformed and misled him as to the status of his appeal when Mr. Schonland told him that the Court had denied his claim "for no merit," when in fact it was dismissed by the Court for failure to prosecute. On April 27, 2004, the grievance was referred to a panel of the Court for action pursuant to Rule 6 of the Court's Rules of Admission and Practice. *See* U.S. VET. APP. R. ADM. & PRAC. (A&P RULE) 6. In considering Mr. McGrath's grievance, the panel became aware that the respondent had been counsel in another case before this Court that, on the basis of missed deadlines, had been dismissed for failure to comply with the Court's Rules of Practice and Procedure. *See* U.S. VET. APP. R. (P&P RULES).

On July 14, 2004, the Court ordered the respondent to show cause, within 30 days, why this matter should not be referred to the Court's three-member Committee on Admission and Practice (Committee) for appropriate investigation. Mr. Schonland timely responded and stated that administrative problems at his office had caused the missed deadlines in both cases but that the problem had been corrected. He averred that the appeals that had been dismissed by the Court had since been reinstated, and requested that no further action be taken. On December 1, 2004, the panel

referred the matter to the Committee for investigation, a possible hearing, and preparation of a report for the panel.

On December 22, 2005, pursuant to A&P RULE 2(c)(3), the Committee provided Mr. Schonland and the panel its report, including its recommendation that the respondent be disbarred from this Court. *See* A&P RULE 2(c)(3). The report documents the investigation, which we now summarize. In January 2005, the Committee sent Mr. Schonland notice of the action, to which he responded in March 2005. At that time he stated that the "situation was serious and regrettable," but that, as a disabled veteran himself, he did not want to give up his representation of veterans. He expressed a willingness to acknowledge error; however, he asked that the penalty be proportional to the harm done, and emphasized that no veterans had lost any rights as a result of his actions. He suggested that he not take any new veteran's case for one year. The Committee deemed this response insufficient and on May 19, 2005, sent the respondent interrogatories and a request for document production. Thereafter, the only written communication received from the respondent was a July 15, 2005, letter to the Clerk of the Court, with a copy sent to the Committee, stating: "I hereby resign as a member of the [Court's] Bar." On July 20, 2005, the Committee sent the respondent a letter stating that it had received no response to the interrogatories and document request, and reminding him of his duty to cooperate with the continuing investigation. Mr. Schonland did not respond to that letter and the Committee provided its report to the panel in December 2005.

The report further states that the Committee reviewed extensively three cases before this Court in which the respondent was counsel. In the first case, Mr. Schonland repeatedly missed deadlines and, in its adjudication of the merits of the appeal, the Court harshly critiqued his brief. In the second and third cases, the appeals were dismissed for failure to comply with the Court's P&P RULES as a result of missed deadlines. Indeed, in the second case, the veteran's appeal was reinstated only after he complained to the Court that Mr. Schonland had informed him that a brief had been filed in his appeal when one had not. In the third case, Mr. McGrath's appeal, the Court denied Mr. Schonland's request for reinstatement; however, Mr. McGrath retained new counsel who successfully requested that the Court reinstate the appeal and remand the matter. The Committee report concludes that the quality of Mr. Schonland's representation in those three appeals was "wholly inadequate" and "below the minimum standards" for members of the Court's bar. The Committee described as "uncontroverted" the veterans' allegations in the second and third appeals

that the respondent had informed them that he had filed briefs in their cases when in fact he had not. The report states that Mr. Schonland did not disagree with the allegations of misconduct. Notably, the report also states that, despite his attempted July 2005 resignation from the Court's bar, Mr. Schonland's Web site, as of December 20, 2005, showed his practice areas to include "veterans' claims."

The report further finds that Mr. Schonland exhibited a willful failure to cooperate with the Committee in violation of A&P RULE 2(f). *See* A&P RULE 2(f) (practitioner has duty to cooperate with Committee). The Committee report concludes that the respondent's actions, both in his representation of his clients, and in his dealings with the Committee, demonstrate violations of several of the American Bar Association Model Rules of Professional Conduct (ABA MODEL RULES): ABA MODEL RULE 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication), 3.1 (Meritorious Claims and Contentions), 7.1 (Communications Concerning a Lawyer's Services), and 8.4 (Misconduct). In unanimously recommending disbarment, the Committee reviewed the ABA Standards for Imposing Lawyer Sanctions (ABA STANDARDS) and concluded that the respondent has "exhibited a pattern of misconduct, committed multiple offenses, shown bad faith obstruction of the disciplinary proceedings, essentially refused to acknowledge the wrongful nature of his conduct, and, most importantly, failed to provide competent and diligent representation to vulnerable clients." *See* ABA STANDARDS. The report recognizes one mitigating factor–that the Committee found no evidence of any prior disciplinary record–but nevertheless recommends, in light of the seriousness of the matter, that the Court not accept Mr. Schonland's resignation and that he be disbarred.

On December 27, 2005, Mr. Schonland submitted a response to the Committee's report. He admits to the violations and states that they were the result of the conduct of an attorney whom he had hired but who failed to pursue the veterans' cases assigned to him, and that that attorney has been discharged from Mr. Schonland's employment. Mr. Schonland states that he has represented 13 veterans before the Court and in 10 of those cases he received no criticism from his clients. Although he recognizes that he is ultimately responsible for the actions of his employees, he contends that all three problematic cases revolved around this "internal issue," i.e., the negligent employee, and that the problem has been corrected. He suggests that resigning from practice before the Court should resolve the matter, and, in response to the Committee's recommendation, he states:

3

"Disbarment would cause my personal ruin, financial bankruptcy to myself, and also harm to the staff (3 individuals) here." He contends that he thought that his resignation from the Court's Bar would cease all further inquiry and that he never intended not to cooperate with either the Court or the Committee. He also states that, should the Court decide to impose the discipline recommended by the Committee or another sanction beyond his resignation, he requests a hearing.

On April 16, 2007, pursuant to A&P RULE 5(d), the Court issued an unpublished order that advised Mr. Schonland of this disciplinary determination and of his rights to reconsideration or review. *See* A&P RULE 5(d). The Court received no response to that order from Mr. Schonland.

## II. STANDARD OF REVIEW

Attorneys before the Court are subject to the Court's disciplinary authority for professional misconduct. A&P RULE 4(b); *In re R. Greg Bailey*, 182 F.3d 860, 864 (Fed. Cir. 1999) (acknowledging this Court's authority to discipline attorneys practicing before it). Generally, the disciplinary standards for practice before the Court are those of the ABA MODEL RULES. *See* A&P RULE 4(a). "In a grievance proceeding, discipline will be imposed only upon a finding of clear and convincing evidence that the practitioner engaged in professional misconduct." A&P RULE 6(c); *see also* ABA STANDARDS 1.3. If attorney misconduct is found, the ABA STANDARDS provide guidance on the imposition of a particular disciplinary sanction. The purpose of imposing sanctions under the ABA STANDARDS is to protect the public and the administration of justice from lawyers who have not discharged properly the professional duties owed to their clients, the public, the legal system, and the legal profession. *See* ABA STANDARDS 1.1. Under that framework, and to carry out that purpose, consideration is given to the duty or duties that the lawyer violated, the lawyer's mental state, the amount of actual or potential injury caused by the misconduct, and any aggravating and mitigating circumstances. ABA STANDARDS 3.0.

4

### III. ANALYSIS

#### A. Respondent's Misconduct

Mr. Schonland's conduct, which he acknowledges by accepting the conclusions of the Committee regarding his representation of the appellants in the three reviewed appeals, clearly violates the ABA MODEL RULES. His failure to prosecute the appeals of his clients and his misrepresentations to at least two of them regarding the reason for the Court's dismissal of their appeals involve knowing deceit and represent a lack of conscientiousness, communication, and candor in violation of the ABA MODEL RULES. *See* ABA MODEL RULES 1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client."), 1.4(a)(3) ("A lawyer shall keep the client reasonably informed about the status of the matter."), 8.4(c) ("It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."). Mr. Schonland's lack of response to the Committee's interrogatories and document request further demonstrates a failure to cooperate with the Committee in violation of the Court's A&P RULES and the ABA MODEL RULES. *See* A&P RULE 2(f) (practitioner has duty to cooperate with Committee); ABA MODEL RULE 8.1(b) (lawyer shall not knowingly fail to respond to lawful request for information from disciplinary authority). Accordingly, based on these undisputed facts, we find clear and convincing evidence of the respondent's misconduct.

#### B. Sanctions

##### 1. Committee's Recommendation

In determining an appropriate sanction for Mr. Schonland's misconduct, the Court considers the recommendation of the Committee as well as the framework established in the ABA STANDARDS. The Committee unanimously recommends disbarment of Mr. Schonland based on its consideration of the ABA STANDARDS and its findings of his pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceedings, initial refusal to acknowledge the wrongful nature of his conduct, and failure to provide competent and diligent representation to vulnerable clients. The Committee also affords considerable weight to what it describes as Mr. Schonland's attempt to evade the consequences of his misconduct through his effort to resign from the Court's bar during the disciplinary investigation. The only mitigating factor identified by the Committee is Mr. Schonland's apparent lack of any prior disciplinary record. The Court is appreciative of the work of the Committee, and commends the thorough and professional efforts of

this volunteer body. The comprehensive and assiduous report demonstrates the Committee's sincere and steadfast commitment to assuring the highest quality of representation before the Court. Upon consideration of Mr. Schonland's response to the Committee's report, however, and for the following reasons, the Court will not disbar the respondent, but will instead impose a two-year suspension from the practice of law before this Court.

### 2. ABA Disciplinary Standards and Framework

In determining an appropriate sanction for Mr. Schonland, the panel has considered the four factors identified in the ABA STANDARDS: (1) The duty that he violated, (2) his mental state, (3) the amount of actual or potential injury caused by the misconduct, and (4) any aggravating and mitigating circumstances. ABA STANDARDS 3.0. Mr. Schonland violated his duty to pursue his clients' appeals diligently and to be candid with his clients. Although he contends that it was the actions of his employee that caused the lapses in his representation, he also acknowledges that he is responsible for the actions and inactions of his employee, and accepts the conclusions of the Committee with regard to that representation. He contends that he has represented 13 veterans before the Court, 10 of those appeals were unremarkable, and although two of those appeals were dismissed for procedural failures, both of those cases were subsequently reinstated. Notwithstanding those reinstatements, Mr. Schonland failed in his duties to his clients, to the Court, and to the legal system. At a minimum, his actions demonstrate negligence in failing to properly supervise his employee.

Additionally, Mr. Schonland was dishonest with his clients when he informed two of them that briefs had been filed in their appeals when they had not, and when he told Mr. McGrath that his appeal had been denied for lack of merit when it had not. The cornerstone of any attorney-client relationship must be a client's ability to rely on the veracity of his attorney's communications. This failing by Mr. Schonland is paramount. Although he states that no injury resulted from his conduct because no veterans lost any rights as a result of his actions, both *actual* and *potential* injury must be considered. ABA STANDARDS 3.0. In the two cases that were initially dismissed by the Court, it was only after the veterans directly contacted the Court and, in Mr. McGrath's case, when he retained new counsel, that the appeals were reinstated. To the veterans who had relied on Mr. Schonland to advance their appeals, there can be little potential injury worse than not having their cases heard on the merits. The dismissals and the misconduct leading up to them were potentially

6

injurious to the veteran-clients, and served to erode the public's trust in the integrity of the legal profession.

Further, despite Mr. Schonland's assertion that he did not intend not to cooperate with the Committee, at a minimum his failure to reply to the Committee's repeated requests and his stated belief that his tendered resignation would end the disciplinary investigation demonstrate negligence and a departure from the reasonable standard of care with which a lawyer must conduct himself. *See* A&P RULE 2(f); ABA MODEL RULE 8.1(b). Such professional failures erode confidence in the regulation of the legal profession and affect negatively the administration of justice.

Disbarment is reserved for the most serious cases. *See* ABA STANDARDS 2.2. In considering an attorney's lack of diligence and candor, the ABA STANDARDS suggest that disbarment is generally appropriate when an attorney knowingly fails to perform services or engages in a pattern of neglect causing serious or potential serious injury. *Id.* 4.41, 4.61. Examples of such conduct include situations where hundreds of clients were affected, where years of neglect were demonstrated, or where the lawyer intended to benefit himself. *See id.* 4.41 cmt., 4.61 cmt. In contrast, suspension is advocated when an attorney knowingly fails to perform services or engages in a pattern of neglect causing injury or potential injury to a client. *Id.* 4.42, 4.62. Suspension has been imposed for an attorney's failure to communicate with a client, for misrepresentations regarding the nature or extent of the services performed, or for failure to prosecute a case. *Id.* The ABA STANDARDS suggest that suspension is also appropriate when a lawyer knowingly violates a court order. Reprimand may be appropriate when the transgression is limited to trial misconduct, or a violation of a court order or rule, such as failing to or untimely filing a brief, or neglecting to respond to a disciplinary agency. *Id.* 6.22-23, 6.22-23 cmt.

The ABA STANDARDS cite aggravating factors that may justify an increase in the degree of discipline. *Id.* 9.2. Such factors include prior disciplinary offenses, dishonest or selfish motives, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding, submission of false evidence, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, substantial experience in the practice of law, and indifference to making restitution. *Id.* 9.22. In contrast, mitigating factors may justify a reduction in the discipline imposed, including the following: Absence of a prior disciplinary record, absence of dishonest or selfish motives, timely good faith effort to rectify consequences of misconduct, cooperative attitude

7

toward the disciplinary board, inexperience in the practice of law, character and reputation, delay in disciplinary proceedings, and remorse. *Id.* 9.32. The Court has considered these factors in determining the appropriate sanction for Mr. Schonland.

Further, although Mr. Schonland tendered his resignation from the Court's bar in July 2005, the Court has discretion to decline or accept that resignation, and, in fact, Mr. Schonland continued to advertise his veterans law practice on his Web site until at least December 2005. *See In re Conn*, 16 Vet.App. 364, 365 (2002) (holding Court has inherent power and discretion to accept resignations from bar members involved in disciplinary proceedings). Based on the discipline here imposed, the Court declines to accept Mr. Schonland's resignation and notes that his tendering of his resignation served as neither an aggravating nor mitigating factor in the Court's imposition of sanctions. *See* ABA STANDARDS 9.4 (stating that "resignation prior to completion of disciplinary proceedings" should not be considered either aggravating or mitigating factor).

### *3. Hearing Request*

The panel denies Mr. Schonland's request for a hearing. Pursuant to A&P RULE 2(d)(3), a practitioner who is being considered for discipline is entitled to a hearing before the Committee if he makes a written request for such, not later than 30 days after the date of the Committee's initial notice to the practitioner regarding the adverse matter. Here, that notice was sent to Mr. Schonland in January 2005, and no hearing request was made until December 2005. Mr. Schonland, therefore, failed to comply with the requirements for requesting a Committee hearing *as of right*. *See* A&P RULES 2(d)(3), 2(e)(1) ("In a case where the practitioner concerned has requested a hearing, a hearing must be conducted before the submission by the Committee of a report to the Court."). Further, because we conclude that Mr. Schonland has been afforded repeated opportunities to present all relevant facts and any explanation, the panel declines to afford him a hearing before the Court. *See* A&P RULE 6(b)(4) (although Court may exercise discretion, a hearing before the Court will not generally be held).

*4. Imposition of Sanction*

After weighing Mr. Schonland's offenses in the context of the ABA STANDARDS, we find that a two-year suspension is appropriate. Although disbarment, as recommended in the Committee report, may have appeared to be the appropriate sanction at the time that that recommendation was made, Mr. Schonland's response to that report demonstrates mitigating circumstances, and alleviates some of the aggravating circumstances identified in the report. The panel concludes that the respondent, although negligent in failing to cooperate fully with the Committee's investigation, did not act in bad faith, and that he has shown remorse and a willingness to acknowledge the wrongful nature of his conduct. Further, the panel considers its own delay in this disciplinary proceeding as a mitigating factor. *See* ABA STANDARDS 9.32. Thus, although Mr. Schonland's multiple instances of misconduct are reprehensible, after considering all factors relevant to imposing a sanction, his circumstance is not comparable to those instances where disbarment has been imposed. Accordingly, after considering the fairness to the respondent, the public, and the bar, we will order Mr. Schonland suspended for a period of two years. The Court anticipates that this sanction will sufficiently impress upon Mr. Schonland the responsibility with which he must carry out his professional responsibilities before the Court on behalf of his clients.

## IV. CONCLUSION

Upon consideration of the foregoing, and pursuant to A&P RULES 5 and 6(b)(3)(C), it is

ORDERED that attorney Rodney Schonland is suspended from practice before this Court for a period of two years. Reinstatement may occur only upon a showing by Mr. Schonland of clear and convincing evidence of his fitness to practice veterans law and compliance with A&P RULE 11 (procedures for reinstatement after suspension).

DATED: July 2, 2007                                   PER CURIAM.

9